# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LUANN LEPKOWSKI, on behalf of herself　　)
and others similarly situated,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiffs,　　　　　　)
　　　　v.　　　　　　　　　　　　　　)　　　C.A. No. 10-38 Erie
　　　　　　　　　　　　　　　　　　　)　　　Judge McLaughlin
TELATRON MARKETING GROUP, INC,　　　)
and BANK OF AMERICA CORPORATION,　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　)


## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

　　　　Presently pending before the Court is Defendant Bank of America's Motion to
Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).  Also before the Court is
Plaintiff Luann Lepkowski's Motion for Conditional Class Certification.  For the reasons
which follow, both motions will be granted.


## I.  BACKGROUND

　　　　Plaintiff Luann Lepkowski ("Lepkowski") is employed as a phone operator in the
Erie, Pennsylvania call center of Defendant Telatron Marketing Group, Inc. ("Telatron"), a
North Carolina corporation in the business of providing "customer relationship management
services" for corporate clients located throughout the United States.  (Amended Complaint,
¶¶ 7, 9).  Defendant Bank of America ("BoA"), a large financial services company, is one
of Telatron's corporate clients.  (Amended Complaint, ¶ 8).  As such, Telatron phone
operators handle and process inbound telephone calls from BoA customers related to BoA's

1

financial services. (Amended Complaint, ¶ 8). Since February 16, 2006, approximately 200 Telatron employees, including Lepkowski, have been assigned by Telatron to work exclusively on BoA accounts. (Amended Complaint, ¶ 9).

Phone operators at Telatron are paid on an hourly basis and usually work at least 40 hours per week. (Amended Complaint, ¶ 10). However, Lepkowski alleges that phone operators are not compensated for approximately 15 minutes per day of time spent logging into their computer systems and gaining access to the computer programs that they use throughout the work day. (Amended Complaint, ¶ 12). She further alleges that phone operators are not compensated at the appropriate overtime premium rate of pay for hours worked in excess of 40 in a week. (Amended Complaint, ¶¶ 32, 39). Lepkowski contends that these alleged actions violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq*. Lepkowski also asserts a claim of unjust enrichment based upon the alleged acts. Finally, Lepkowski alleges that the approximately 200 Telatron employees assigned to work on BoA accounts since February 16, 2006 are similarly situated and have been subjected to the same unfair business practices such that class action certification is appropriate.[1] (Amended Complaint, ¶¶ 18-26).

In its motion to dismiss, BoA primarily contends that it cannot be liable under either the FLSA because it was not Plaintiffs' "employer" within the meaning of that statute. Relative to the issue of joint employership, the Amended Complaint contains the following averments:

> Telatron's corporate clients include BoA, which is one of the Nation's largest financial services companies. Telatron acts directly in the interest of BoA. In particular, Telatron and BoA maintain a joint contractual relationship whereby Telatron service representatives handle and process inbound

---

[1] Lepkowski and the other putative class members will be collectively referred to as "Plaintiffs" throughout this opinion.

telephone calls from BoA customers pertaining to BoA credit card and debt services and products. These Telatron service representatives work exclusively on the BoA account.

Plaintiff and other class members use computers, computer software programs, and computer databases that are owned and maintained by BoA and that enable Plaintiff and other class members to access confidential BoA customer account information during their phone calls with BoA customers. The use of such computers, computer software programs, and computer databases is integral and indispensable to the work performed by Plaintiff and the class members on BoA's behalf.

Plaintiff and the other class members are under the common control of both Telatron and BoA. For example, Telatron issues paychecks to Plaintiff and the class members, provides them with office space, and serves as their employer-of-record. BoA, meanwhile, directly trains Plaintiff and other class members concerning BoA products, procedures, and protocols and oversees the day-to-day work of Plaintiff and other class members by, *inter alia*, monitoring the content of phone calls between the class members and BoA customers to ensure that the class members are following detailed BoA procedures and protocols. Class members who fail to follow BoA's mandatory procedures and protocols are subject to disciplinary action.

Plaintiff and other class members perform work that simultaneously benefits both Telatron and BoA. For example, Telatron has earned substantial fees stemming from its BoA account. BoA, meanwhile, has benefitted from the services that Plaintiff and the class members directly provide to BoA customers.

The work performed by Plaintiff and other class members is integral to BoA's communications with its customers, and, in fact, Plaintiff and the class members identify themselves as BoA representatives during phone calls with customers.

(Amended Complaint, ¶¶ 8, 11, 13-15).

Oral argument on BoA's Motion to Dismiss and Plaintiffs' Motion for Conditional Certification was held on December 7, 2010. This matter is ripe for review.


## II. STANDARD FOR REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3rd Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3rd Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3rd Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to makes a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008

WL 482469 (D. Del. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555 n.3).

## III. ANALYSIS

### A.   BoA's Motion to Dismiss

It is axiomatic that only "employers" are liable for violations of the FLSA. See 29 U.S.C. §§ 201, et seq. In her Amended Complaint, Plaintiffs assert that both Telatron and BoA are liable for the alleged FLSA violations because they acted as joint employers. Federal regulations provide that an entity may be a "joint employer" in certain circumstances:

> A single individual may stand in the relation of an employee to two or more employers at the same time . . . A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case.

29 C.F.R. § 791.2(a).

Analysis of whether a party such as BoA is a joint employer requires a court to take into account the "'real economic relationship' between the employee, employer, and putative joint employer." Jacobson v. Comcast Corp., 2010 WL 3769120, *3 (D. Md. 2010) (citing Schultz v. Capital Int'l Sec. Inc., 466 F.3d 298, 306 (4th Cir. 2006); Tony and Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 301 (1985)). There is no mechanical test to evaluate the economic reality between employees and putative joint employers; rather, "[j]oint employment is to be assessed in light of the totality of the circumstances." Braden v. County of Washington, 2010 WL 1664895, *6 (W.D. Pa. 2010) (citing 29 C.F.R. § 825.106(b)(1)); Jacobson, 2010 WL 3769120 at *3.

There is no unanimity of opinion, however, as to the appropriate factors to be considered in analyzing whether a joint employment relationship exists. See Zavala v. Wal-Mart Stores, Inc., 393 F.Supp.2d 295, 329-30, n. 26 (D.N.J. 2005) (noting the various factors utilized by different federal circuits). For example, in Zheng v. Liberty Apparel Co., Inc. 355 F.3d 61, 72 (2nd Cir. 2003), the Second Circuit listed the following factors as pertinent to such an analysis:

> (1) whether the premises and equipment of the purported joint employer are used for the plaintiffs' work; (2) whether the contractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the process of production for the purported joint employer; (4) whether responsibility under the contracts could pass from one subcontract to another without material changes; (5) the degree to which the purported joint employer or their agents supervised the plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the purported joint employer.

Zheng, 355 F.3d at 72. In the Ninth Circuit, courts focus primarily on whether the proposed employer (1) had the power to hire and fire employees, (2) supervised or controlled employee work schedules or conditions of employment, (3) determined the rate or method of payment, and (4) maintained employment records. See Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1983). Other circuit and district courts typically apply their own variation of one or more of these tests. See, e.g., Zavala, 393 F.Supp.2d at 329-30, n. 26; Braden, 2010 WL 1664895 at *6; Jacobson, 2010 WL 3769120 at *3.

The Third Circuit has not specifically addressed what factors should be applied in determining whether a joint employment relationship exists. See Zavala, 393 F.Supp.2d at 329. The parties disagree as to what factors should be applied to the instant dispute. Plaintiff contends that the appropriate standard is the widely-cited six-factor test set forth in Zheng, while BoA urges the court to apply the four-factor test developed by the Ninth Circuit in Bonnette (and recently utilized by a court in this district in Braden). See Braden, 2010 WL 1664895 at *6 (holding that the relevant factors are "whether the alleged employer had the

power to hire and fire the employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of compensation, and maintained employment records"). In the interest of a thorough and complete analysis, and because I reach the same result under either standard, I will analyze the allegations set forth in the Amended Complaint pursuant to both <u>Zheng</u> and <u>Bonnette</u>, keeping in mind that it is "the totality of the circumstances, rather than any particular factor, [that] govern[s] the determination of whether joint employment exists." <u>Zavala</u>, 393 F.Supp.2d at 329 (citing <u>Johnson v. The Unified Gov't of Wyandotte County</u>, 371 F.3d 723, 729 (10th Cir. 2004)).

**1.    Did BoA have the power to hire or fire Telatron employees?**

The first <u>Bonnette</u> factor asks whether BoA had the power to hire or fire Telatron customer service representatives such as the Plaintiffs. At oral argument, Plaintiffs' counsel conceded that the Amended Complaint lacked any allegation that BoA possessed such authority:

> The Court:    You do not plead that the BoA had the power to hire or fire these individual employees, do you?
>
> Counsel:    I believe your Honor, that we pled that BoA had – had the ability to discipline them or at lease cross-disciplinary action. But that's right, we don't allege that BoA hired, had a role in hiring them.

(Transcript, p. 14). As referenced by counsel, the Amended Complaint does allege that employees "who fail to follow BoA's mandatory procedures and protocols are subject to disciplinary action." (Amended Complaint, ¶ 13). The Amended Complaint does not allege, however, or even inferentially support the contention that BoA itself possesses the power to discipline Telatron employees:

> The Court:    Is it your contention or is it your belief that to the extent that disciplinary action, whatever grade that would be, whether it's simply a reprimand or written warning or all the way to termination, is it your contention that falls within the bailiwick of

> Telatron or that BoA actually has power to
> discipline these people up to and including
> termination?
>
> Counsel:    In the absence of discovery, plaintiffs have no
> reason – plaintiffs can't assert in good faith that
> BoA has the power to require that somebody be
> terminated.

(Transcript, p. 14). In the absence of any allegation that BoA had any control over the hiring and firing of Telatron employees, this factor cuts against joint employership. See Braden, 2010 WL 1664895 at *7 (concluding that the defendant was not plaintiff's joint employer because, *inter alia*, it lacked the power to terminate her employment, even where defendant had recommended that plaintiff be "suspended, written up, and fired").

### 2.    Did BoA possess authority to supervise and control work schedules or employment conditions?

The second Bonnette factor queries whether the putative joint employer exercises "effective control of the terms and conditions of the plaintiff's employment." Zheng, 355 F.3d at 74-75. This inquiry "does not contemplate the generic control exercised by a supervisor over an independent contractor," Jacobson, 2010 WL 3769120 at *4, or "encompass run-of-the-mill subcontracting relationships." Zheng, 355 F.3d at 74. Rather, it looks to whether the putative joint employer's level of control is such that it extends to setting plaintiffs' work schedules or altering their work conditions. See, e.g., Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947) (finding control over putative employees because the putative employer directed changes in working conditions "many times a day" and played a role in setting the employees' schedules); Bonnette, 704 F.2d at 1470 (finding joint employment where defendant "exercised considerable control over the structure and conditions of employment" by determining "the number of hours each chore worker would work and exactly what tasks would be performed"); Jacobson, 2010 WL 3769120 at *4.

Courts have widely held that "detailed instructions and a strict quality control mechanism will not, on their own, indicate an employment relationship." Jacobson, 2010 WL 3769120 at *4; Zheng, 355 F.3d at 75 (holding that "supervision with respect to contractual warranties of quality and time of delivery [have] no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement"); Moreau v. Air France, 343 F.3d 1179, 1188 (9th Cir. 2003) (concluding that specific instructions issued to a service provider as to how to perform a service did not amount to joint employment). Rather, "detailed instructions and close monitoring are key components in many independent contractor and franchise relationships." Jacobson, 2010 WL 3769120 at *4. In Jacobson, the purported joint employer, Comcast, subcontracted out installation of cable television services to various installation companies who, in turn, hired technicians to physically install cable service for subscribers. Although Comcast maintained "specific standards to which the Installation Companies and technicians must adhere" and "regularly monitor[ed] the location of technicians, spefic[ied] the time at which they are supposed to arrive at appointments, and regularly evaluat[ed] completed work to ensure that it meets standards," the court concluded that Comcast was not a joint employer because it was not responsible for day-to-day management of the technicians and did not influence their working conditions or the conditions under which they received payment. Id. at *5. The court distinguished Comcast's extensive control over product quality and customer satisfaction from its lack of control over the working conditions of the technicians, noting that the former is "qualitatively different from the control exercised by employers over employees." Id.

Similarly, in Moreau, the Ninth Circuit determined that Air France was not the joint employer of airport ground crew members despite providing extensive supervision, dictating performance requirements, and maintaining rigid quality control over their activities. Moreau, 356 F.3d 951. The Court concluded that these control measures, while extensive,

were designed to ensure passenger safety, rather than to assert the type of control over employees typically exercised by an employer.  Id.; see also Braden, 2010 WL 1664895 at *7 (rejecting claim of joint employment where defendant did not maintain "direct or indirect control over Plaintiff's work schedules or working conditions" despite evidence that the putative joint employer was involved in her payroll and benefits administration, present during her hiring, and provided human resources support).

In the instant case, the Amended Complaint alleges that BoA "directly trains Plaintiff and other class members concerning BoA products, procedures, and protocols and oversees the day-to-day work of Plaintiff and other class members by, *inter alia*, monitoring the content of phone calls between the class members and BoA customers to ensure that the class members are following detailed BoA procedures and protocols." (Amended Complaint, ¶ 13).  Plaintiffs contend that this factor favors joint employment because BoA provides Plaintiffs with scripts and protocols to use while responding to BoA account holders and monitors calls to ensure that those scripts are followed.  (See Transcript, p. 15).  However, these measures reflect precisely the type of quality control and customer service supervision that courts have consistently held to be "qualitatively different" from the control exercised by an employer over an employee.  Jacobson, 2010 WL 3769120 at *5; Moreau, 356 F.3d 951; Zheng, 355 F.3d at 74-75.  Compare Zavala, 393 F.Supp.2d at 331 (finding the complaint sufficient to state an allegation of joint employership where it alleged that the putative joint employer "exercised the power to hire and fire plaintiffs" and "controlled their wages, hours and working conditions").  There is no allegation in the Amended Complaint that BoA set the hours or schedules worked by Telatron employees or otherwise influenced their day-to-day conditions of employment.  As such, this factor, like the first, cuts against a finding of joint employership.

### 3.      Did BoA have authority to determine rates and methods of payment?

Plaintiff concedes that the Amended Complaint contains no allegation that BoA had any influence over the rate and method of compensation for Telatron employees:

> The Court:  Is it or is it not your contention that Bank of America determined the rate and method of compensation for the Telatron employees?
>
> Counsel:  That's not a contention.
>
> The Court:  In other words, you do not contend that Bank of America did that, is that correct?
>
> Counsel:  Correct.

(Transcript, pp. 15-16).  This factor weighs heavily against joint employership.


### 4.    Did BoA maintain employment records for Telatron employees?

The Amended Complaint also contains no allegation that BoA maintained employment records for Telatron employees.  Counsel conceded this point at oral argument:

> The Court:  I similarly assume you do not contend that Bank of America maintained employment records for Telatron employees:
>
> Counsel:  We don't contend that, that's correct, your honor.

(Transcript, p. 16).

I conclude, therefore, that the Amended Complaint fails to allege any of the four indicia of joint employment set forth by the Ninth Circuit in <u>Bonnette</u>.  <u>See</u> <u>Bonnette</u>, 704 F.2d at 1470; <u>see also</u> <u>Braden</u>, 2010 WL 1664895 at *6.  I now consider whether any of the additional factors suggested in <u>Zheng</u> dictate a different result.[2]

---

[2]    Only the first, second and fourth factors identified by the Second Circuit in <u>Zheng</u> are addressed in detail below.  The fifth and sixth factors, each of which explore the degree to which the putative joint employer exercises direct control over the plaintiffs' work, are duplicative of the <u>Bonnette</u> factors analyzed above and require no further discussion.  The third <u>Zheng</u> factor, concerning "the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production," has limited application outside of the context of

(continued...)

**5.      Did Plaintiffs use BoA's premises and equipment for their work?**

The first Zheng factor asks whether the putative joint employer's premises and equipment are used by the plaintiffs in the performance of their work. This inquiry is relevant because "the shared use of premises and equipment may support the inference that the putative joint employer has functional control over the plaintiffs' work." Zheng, 355 F.3d at 72. In Rutherford, for example, the Supreme Court found it significant that "all of the work" performed by the plaintiffs took place on the premises of the putative joint employer. Rutherford, 331 U.S. 726. Similarly, in Zavala, the court held that plaintiffs had alleged sufficient facts to support the contention that Wal-Mart was their joint employer, in part because the janitorial work performed by plaintiffs took place entirely on the premises of various Wal-Mart stores. Zavala, 393 F.Supp.2d at 329-30.

Pertinent to this factor, the Amended Complaint states that Lepkowski and the other putative class members work "at Telatron's Erie, Pennsylvania call center" and that they use "computers, computer software programs, and computer databases that are owned and maintained by BoA." (Compliant, ¶¶ 9, 11). Plaintiffs concede that none of their work is performed at the premises of BoA, a fact which does not support a finding of joint employership. See, e.g., Rutherford, 331 U.S. 726; Zavala, 393 F.Supp.2d at 329-30; Thompson v. U.S. Airways, Inc., 717 F.Supp.2d 468, 479 (E.D. Pa. 2010) ("Plaintiffs have alleged several relevant facts that might suggest that U.S. Airways was a joint employer,

---

[2](...continued)
a product manufacturing line. See, e.g., Copantitla v. Fiskardo Estiatorio, Inc., 2010 WL 1327921, *5 (S.D.N.Y. 2010) ("Some of the factors that the Zheng Court found important for consideration - for example, 'the extent to which plaintiffs performed a discrete line-job that was integral to [the putative joint employer's] process of production,' 355 F.3d at 72 - were specific to the nature of the job at issue in that case, garment manufacturing."); Barfield v. New York City Health and Hospitals Corp., 432 F.Supp.2d 390, 393 n. 1 (S.D.N.Y. 2006) ("[The third] factor was raised by the Zheng court in the particular context of a production line . . . and therefore may be less relevant here.").

including that the skycaps worked on premises owned by U.S. Airways . . ."); <u>Ortiz v. Paramo</u>, 2008 WL 4378373, *4 (D.N.J. 2008) (relevant inquiry includes "whether the work is performed on the alleged employer's premises, rather than on premises owned or controlled by another entity").  On the other hand, Plaintiffs contend that their use of BoA's computers and computer software cuts in favor of joint employership.  <u>See</u>, <u>e.g.</u>, <u>Torres-Lopez v. May</u>, 111 F.3d 633, 643-44 (9th Cir. 1997) (holding that a large farm's "considerable investment in equipment and materials" used by subcontracted farmworkers favored a finding of joint employership).  While an employee's use of the putative employer's equipment can indeed contribute to an inference of joint employment, I find that ownership of the premises on which work is performed is more indicative of supervisory control than ownership of personalty such as equipment, tools, or raw materials.  <u>See</u>, <u>e.g.</u>, <u>Wirtz v. Lone Star Steel Co.</u>, 405 F.2d 668, 669-70 (5th Cir. 1968) (elucidating a standard that asks only "[w]hether or not the employment takes place on the premises of the company" without regard to use of equipment); <u>Moreau</u>, 343 F.3d at 1189 (noting that, although the putative joint employer provided "some equipment, such as the food trays and baggage pallets" to the plaintiff ground workers, this was outweighed by the fact that the "work was primarily performed on the premises of the ground handling companies").  On balance, therefore, I conclude that this factor weighs in favor of joint employment.


6.  **Were Plaintiffs part of a business that could shift as a unit from one putative joint employer to another?**

This factor explores whether the plaintiffs' direct employer, Telatron, seeks business from a wide variety of clients or serves only the putative joint employer.  <u>See</u> <u>Zheng</u>, 355 F.3d at 72.  The absence of a broad client base favors a finding of joint employment because a business which serves only one client is more likely to be dependent upon and subject to the control of the putative joint employer.  <u>Jacobson</u>, 2010 WL 3769120 at *5; <u>see also</u> <u>Chen v. Street Beat Sportswear, Inc.</u>, 364 F.Supp.2d 269, 281 (E.D. N.Y. 2005) ("[I]f the

contractors for which plaintiffs worked accepted jobs from an array of manufacturers, this would suggest that plaintiffs were not tied to Street Beat as a joint employer.").

In the instant case, the Amended Complaint states that Telatron provides customer relationship management services "on behalf of corporate clients located throughout the United States." (Amended Complaint, ¶ 7). At oral argument, counsel for Telatron discussed the extent of Telatron's client base:

> The Court: Would I be correct in assuming that Telatron has many clients for which it provides similar services?
>
> Counsel: Yes, your Honor.
>
> The Court: Other than Bank of America?
>
> Counsel: Yes, your Honor.

(Transcript, p. 7). Plaintiffs' counsel subsequently conceded that this factor does not support a finding of joint employment:

> The Court: Now, the second factor, whether Telatron had a business that could or did shift as a unit from one alleged employer to another. [Telatron's counsel] tells us that they have many clients. Doesn't that factor cut against a joint-employer relationship?
>
> Counsel: I think it's a factor that would weigh against joint employment.

(Transcript, p. 8). I conclude similarly.


### 7. Can the responsibilities of the direct employer be transferred to the putative joint employer without material changes?

In <u>Rutherford</u>, the Supreme Court noted that the putative joint employer in that case repeatedly replaced its subcontractor - the direct employer - and yet the same employees continued to do the same work for the alleged joint employer despite the changeover. <u>Rutherford</u>, 331 U.S. at 725. In the Court's view, this continuity suggested that the employees "were tied to the putative joint employer, rather than the subcontractor."

Jacobson, 2010 WL 3769120 at *5 (citing Rutherford, 331 U.S. at 725). In contrast, where "employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment relationship exists." Zheng, 355 F.3d at 74.

As applied to the instant case, the relevant inquiry is whether Plaintiffs would continue to perform the same customer management services for BoA in the same manner, even if BoA terminated its relationship with Telatron and engaged another customer relationship company to handle their client accounts. The Amended Complaint fails to allege any facts indicating (or creating an inference) that this would be the case. Rather, the averment in the Amended Complaint that Telatron, rather than BoA, issues Plaintiffs' checks and provides them with office space implies that Plaintiffs only work for BoA to the extent that Telatron, their direct employer, has been engaged by BoA. (Complaint, ¶ 11). See Zheng, 355 F.3d at 74. Telatron's counsel explored this point at oral argument:

> We are a customer relationship management service, judge. What that means is we provide similar services to entities. That may be that some people only work on Bank of America's account, as long as we have it. If we lost that account, they would do the same thing for someone else, of course.

(Transcript, p. 12). As such, this factor weighs against joint employment.

In sum, I conclude that the Amended Complaint fails to plead sufficient factual allegations to satisfy any of the seven joint employment factors analyzed above. Indeed, the Amended Complaint fails even to "raise a reasonable expectation that discovery will reveal evidence" to support the claim asserted. See Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555 n.3). Consequently, BoA's motion to dismiss Plaintiffs' FLSA claim on the basis that BoA is not Plaintiffs' "employer" is granted.[3]

---

[3]  District courts are generally instructed to offer plaintiffs an opportunity to amend a deficient complaint unless it would be inequitable or futile to do so. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3rd Cir. 2002). Here, for

(continued...)

Having dismissed the only federal cause of action asserted against BoA, I decline to exercise pendent jurisdiction over the remaining state law claims.  "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."  Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988) (quoting United Mine Workers of America v. Gibbs, 383 U.S. 715, 725-27 (1966)).  In general, "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  Gibbs, 383 U.S. at 726 (acknowledging that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Accordingly, Plaintiffs' state law PMWA and unjust enrichment claims against BoA are dismissed without prejudice.

**B.    Plaintiffs' Motion for Conditional Class Certification**

In the second motion before the Court, Plaintiffs move for conditional certification of a class consisting of: "All individuals employed at Telatron Marketing Group, Inc's Erie,

---

[3](...continued)
the reasons set forth above, I find that any such amendment would be clearly futile.  Moreover, Plaintiffs have specifically disavowed any intention to further amend the complaint:

| The Court: | [L]et me ask this question.  I know it's your position, Mr. Winebrake, that the complaint, as presently drafted, is adequate, is that right? |
| --- | --- |
| Counsel: | Correct. |
| The Court: | [Y]ou do not ask in the alternative for leave to amend or for any period of discovery to try to clear up loose ends, is that right? |
| Counsel: | Correct. |

(Transcript, p. 18).

Pennsylvania call center and assigned to the Bank of America Corporation account during any workweek since February 16, 2006." (Motion for Conditional Certification, Dkt. 30).

The Fair Labor Standards Act permits employees to maintain a representative action for overtime pay on their own behalf and on behalf of all similarly situated employees. 29 U.S.C. §216(b). There are two requirements for a collective action under 29 U.S.C. § 216(b): (1) all of the plaintiffs must be "similarly situated," and (2) all of the plaintiffs must opt-in to the lawsuit by filing a written consent with the court. Sperling v. Hoffman-LaRoche, Inc., 862 F.2d 439 (3rd Cir. 1988).

Certification of a "class" in an FLSA action is a two-step process. In the first phase, the court determines whether a class should be conditionally certified for the purpose of notice to potential opt-in plaintiffs and for pretrial discovery regarding their individual claims. See, e.g., Mooney v. Aramaco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). Once the class is conditionally certified, notice is given to the potential plaintiffs so that they may elect whether to opt-in to the action. The second phase of class certification occurs after discovery has taken place. At that time, the court can be asked to reconsider the conditional class certification to determine whether the "similarly situated" standard has been met. Sperling, 862 F.2d at 444.

The instant motion concerns only the first phase of the certification process, i.e., whether to conditionally certify a class of potential plaintiffs and allow notice and discovery to proceed. At this stage, the Plaintiffs need only make a "modest factual showing" that similarly situated employees were injured as a result of a single decision, policy or plan before the proposed class can be conditionally certified. See, e.g., Bosley v. Chubb Corp., 2005 WL 1334565 at *2 (E.D. Pa. 2005); Bond v. Nat. City Bank of Pa, 2006 WL 1744474 at *6 (W.D. Pa. 2006); Smith v. Sovereign Bancorp, 2003 WL 22701017 at *1 (E.D. Pa 2003). This "factual showing requirement enables a court to narrow the potential class from

all of a defendant's employees to just those employees who can possibly claim to have been denied overtime under the same policy as allegedly affected Plaintiffs." Smith, at *3.

Attached to Plaintiffs' motion are sworn declarations from nine class members based upon their personal experiences working for Telatron during the relevant time period. Each of the nine declarations indicates that the declarant was employed by Telatron and assigned to the BoA account for some period of time between February, 2006 and the date of the declaration. Aside from the dates of each individuals' employment, the declarations are identical. Each contains the following sworn allegation with respect to the legal and factual issues germane to this lawsuit:

> While assigned to Telatron's BoA account, myself and other service representatives were required to start up our workstation computers and log-on to Telatron and BoA software programs and databases that were essential to our customer service work. In general, these computer start-up/log-on activities took at least 15 minutes to complete. Myself and other service representatives were required to complete the computer start-up/log-on activities prior to the beginning of our paid shifts, and, as a result of this policy, myself and other service representatives generally were not paid for time engaged in such activities.

(See Cavicchio Decl., Ex. A, ¶ 5; M. Curtis Decl., Ex. B, ¶ 5; T. Curtis Decl., Ex. C, ¶ 5; Italiani Decl., Ex. D, ¶ 5; King Decl., Ex. E, ¶ 5; Lepkowski Decl., Ex. F, ¶ 5; Light Decl., Ex. G, ¶ 5; Scheiwer Decl., Ex. H, ¶ 5; Strohmeyer Decl., Ex. I, ¶ 5).

The only argument raised by Telatron in opposition to Plaintiffs' motion is that the factual allegations contained in the declarations cited above are conclusory and self-serving. (See Defendant's Brief in Opposition, p. 5.) I find, however, that the sworn allegations easily satisfy the "modest factual showing" required at the conditional certification stage. Bosley, 2005 WL 1334565, at *2. To require Plaintiff to "counter every assertion made by the Defendant" at this stage in the proceeding "would condemn any large class claim under the [FLSA] to a chicken-and-egg limbo." See Felix De Asencio v. Tyson Foods, Inc., 130

F.Supp.2d 660, 663-64 (E.D. Pa. 2001) (quoting <u>Sperling v. Hoffmann-La Roche, Inc.</u>, 118
F.R.D. 392 (D.N.J. 1988)).

## IV.  CONCLUSION

For the reasons stated above, Defendant Bank of America's Motion to Dismiss is
GRANTED.  Defendant Bank of America is dismissed from this action.

Plaintiffs' Motion for Conditional Class Certification is GRANTED.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA


LUANN LEPKOWSKI, on behalf of herself )
and others similarly situated, )
)
)
)
Plaintiffs, )
v. )                C.A. No. 10-38 Erie
)                Judge McLaughlin
TELATRON MARKETING GROUP, INC, )
and BANK OF AMERICA CORPORATION, )
)
)
Defendants. )


## ORDER

AND NOW, this 1st day of February, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant Bank of America's Motion to Dismiss is GRANTED. Plaintiffs' FLSA claim against BoA is dismissed with prejudice. Plaintiffs' PMWA and unjust enrichment claims against BoA are dismissed without prejudice. Defendant Bank of America is dismissed from this action.

It is further ORDERED that Plaintiffs' Motion for Conditional Class Certification is GRANTED.


/s/ Sean J. McLaughlin
United States District Judge


cm: All parties of record. ___